**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

CORNELE A. OVERSTREET,
Regional Director, Region 28 of the
National Labor Relations Board,
For and On Behalf of the
NATIONAL LABOR RELATIONS BOARD,

        Petitioner,

vs.                                                                                   No. 13-CV-0165 RB/LFG

SFTC, LLC
D/B/A SANTA FE TORTILLA COMPANY,

        Respondent.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
MEMORANDUM OPINION AND ORDER**

On February 21, 2013, Petitioner Cornele Overstreet, on behalf of the National Labor Relations Board ("Board"), filed a Petition for a Temporary Injunction under Section 10(j) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(j), against Respondent SFTC, LLC, d/b/a Santa Fe Tortilla Company ("SFTC"). (Doc. 2). The Petitioner seeks immediate injunctive relief while the administrative complaint alleging that SFTC violated Sections 8(a)(1) and 8(a)(3) of the NLRA is pending before the Board. SFTC asserts that relief is not proper because the Petitioner does not have reasonable cause to believe that it violated the NLRA and because the requested injunctive relief is neither just nor proper. This matter came before the Court for oral argument on May 13, 2013. Having considered the administrative record, submissions of counsel, oral argument, relevant law, and otherwise being fully advised, the Court grants the 10(j) Petition.

I. **BACKGROUND**

   A. Overview

Section 10(j) provides, in relevant part, that "the Board shall have power, upon issuance of a complaint . . . charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court . . . for appropriate temporary relief or restraining order." 29 U.S.C. § 160(j). The goal of Section 10(j) is to safeguard the Board's remedial authority by permitting interim relief to prevent a respondent from accomplishing its unlawful objective while the Board action is pending. S. Rep. No. 105, 80th Cong., 1st Sess., pp. 8, 27 (1947); *Sharp v. Webco Indus., Inc.*, 225 F.3d 1130, 1136 (10th Cir. 2000); *Angle v. Sacks*, 382 F.2d 655, 659-60 (10th Cir. 1967).

On February 21, 2013, Petitioner brought this action for temporary relief pursuant to Section 10(j) based on unfair labor practice charges filed with Region 28 of the NLRB on August 20, 2012 and December 20, 2012. (Doc. 2). The administrative complaint alleges that SFTC has engaged in several unfair labor practices with the overall goal of preventing its employees from participating in a labor organization, El Comité de Trabajadores de Santa Fe Tortilla ("Comité"), formed by seven of its employees. Since filing the Petition, Administrative Law Judge ("ALJ") William G. Kocol has issued his decision on the charges filed before the Board. ALJ Kocol concluded that SFTC engaged in unfair labor practices by terminating the employment of two members of the Comité but that the other alleged unfair labor practices were not the result of the Comité's activities.[1] (ALJ Decision, Doc. 52 Ex. 1). The Petitioner amended the Petition following the ALJ's decision and now seeks interim relief requiring SFTC to reinstate workers who were terminated, to remove records of the adverse employment actions, and to take

---

[1] ALJ Kocol ordered additional relief based on a claim that Lilian Lopez and Yolanda Rivera were discriminatorily transferred. That claim is not before this Court.

affirmative actions to eliminate the effect of the unlawful terminations on future concerted activities at SFTC. (Doc. 2, as amended by Doc. 52).

### B. Factual Summary

The facility at issue is the Santa Fe Tortilla Company, a factory located in Santa Fe, New Mexico that manufactures and sells tortillas and corn chips to retailers nationwide. (Brief in Opposition to Petition for Temporary Injunction, Doc. 39, at 1). SFTC has approximately eighty employees, overseen by President Kenny Kalfin, Plant Manager Gustavo Terrones, Assistant Plant Manager Alfredo Jasso, and Supervisors Mariela Campos and Arlette de la Mora. (*Id.* at 1-2; Petitioner's Statement of Facts, Doc. 45 Ex. A, at 1). In early August of 2012, six or seven of SFTC's employees began meeting at a local worker's center, Somos Un Pueblo Unido, and decided to form the Comité. (Transcript of Administrative Hearing ("Tr."), Doc. 30-2, Ex. PX 34, at 313:8-22, 472:1-4, 604:2-5). The purpose of the Comité was to organize the employees and work toward improved working conditions at SFTC. (Tr. 427:13-19, 473:6-13, 525:20-22, 571:22-572:4, 605:19-23).

The Comité sent a series of letters to Kalfin detailing their concerns with the terms and conditions of employment at SFTC. The first was written on August 7, 2012, and signed by employees Yolanda Galaviz, Delfino Bruno, Jesus Saldaña,[2] Yolanda Rivera, Juan Lopez ("J. Lopez"), Lilian Lopez ("L. Lopez"), and Gustavo Abel Lopez ("G. Lopez"). (8/7/12 Letter, Doc. 2-8 at 37, Ex. PX 28). The letter announced the formation of the Comité, expressed a desire to meet with Kalfin, voiced concern about unsafe equipment and lack of training (which resulted in injuries to Bruno and Rivera), explained mistreatment of Comité members by supervisors, stated that Saldaña had been subjected to difficult work assignments after revealing his medical condition, and requested a raise. (8/7/12 Letter).

---

[2] This is the name the individual gave SFTC when he became an employee, though his real name is Luis Juarez.

3

After receiving the letter, and over the course of the next several days, Terrones and Jasso summoned all of the Comité members into an office one at a time. (Tr. 39:19-40:6, 40:23-41:7, 115:22-116:10). These employees included Galaviz, Bruno, Rivera, Saldaña, J. Lopez, and G. Lopez. (Tr. 118:20-119:11, 146:2-7). The meetings were conducted at the direction of Kalfin, and SFTC alleges that the purpose was to determine the concerns of the employees and, if deemed valid, to take action in order to alleviate the concerns. (Tr. 37:8-23, 39:6-19).

On August 8, 2012, the Comité wrote a second letter, noting that Terrones had met individually with some Comité members after receiving the first letter and again requesting a meeting between Kalfin and all Comité members as soon as possible. (8/8/12 Letter, Doc. 2-8 at 39, Ex. PX 29). On August 15, 2012, the Comité prepared a third letter stating that the members of the Comité felt they had been retaliated against and intimidated after organizing the Comité based on statements made by the supervisors, assignment to a tortilla making machine in "rapid" mode, and reduced hours. (8/15/12 Letter, Doc. 2-8 at 41, Ex. PX 30). The letter was signed by six employees. (*Id.*)

After the third letter, on August 17, Comité members Galaviz and Bruno were discharged from their employment with SFTC. (Tr. 166:18-23, 183:2-4, 310:18-21, 437:19-439:9). The terminations occurred at Kalfin's direction. (Tr. 49:8-11, 92:20-93:1). Terrones informed Galaviz and Bruno that they were being fired, but he did not know the reason for the terminations; he testified that Kalfin merely told him "that we had to fire Delfina and Yolanda." (Tr. 169:2-7).

Galaviz claims that she was fired without explanation. (Tr. 344:1-23). Kalfin testified that he decided to discharge Galaviz based on his belief that she committed a crime by forging a signature on the August 7 letter, intimidating her co-workers, and lying to her co-workers. (Tr. 72:11-20). Kalfin and Terrones testified that G. Lopez filed a complaint alleging that he did not

sign the August 7 letter and his signature on the letter was forged. (Tr. 73:4-10, 75:4-77:9; *see also* Tr. 677:4-8). Kalfin admitted that G. Lopez did not accuse a specific person of forging his signature and that he had no reason to believe that Galaviz was responsible for G. Lopez's name appearing on the letter. (Tr. 78:5-17; *see also* Tr. 706:3-25). Terrones similarly testified that he did not know who forged G. Lopez's signature. (Tr. 197:3-9). Kalfin and Terrones further testified that other employees made complaints about Galaviz to management. (Tr. 73:15-20, 169:14-182:11). Specifically, Edgar Lopez ("E. Lopez"), an SFTC employee, complained that Galaviz asked him to sign a paper requesting a raise, which he did sign but then reconsidered after learning that it would be taken to a supervisor. (Tr. 79:1-16, 81:19-23, 85:19-86:14, 89:21-90:7, 321:7-327:11). When he asked Galaviz to erase his signature, she implied that the paper had already been given to a supervisor. (Tr. 79:1-16, 81:19-23, 85:19-86:14, 89:21-90:7, 327:5-11). Galaviz then told him that it had not actually been given to a supervisor and handed him the paper, whereupon he erased his signature. (Tr. 90:4-7, 327:8-19). Orbelina Perez Barco and Marilyn Pineda, also SFTC employees, claimed that Galaviz asked them to sign a blank page, which Galaviz represented was for the purpose of requesting a raise. (Tr. 79:1-16, 82:6-12, 90:18-91:3, 91:15-19).

Bruno likewise asserts that her employment was terminated without explanation. (Tr. 439:18-440:2). Kalfin testified that Bruno was discharged because other workers informed Terrones that she was working with Galaviz and pressuring employees to sign Comité letters. (Tr. 93:2-6, 93:14-17; *see also* Tr. 169:14-25). According to Terrones, some employees who complained about the Comité's efforts to collect signatures and generate support named Bruno as participating in these efforts. (Tr. 169:14-180:14).

Following the terminations, the Comité sent a fourth letter, dated August 21, 2012, detailing the perceived retaliatory actions taken against Comité members. (8/21/12 Letter, Doc. 2-8 at 43, Ex. PX 31). It stated that J. Lopez, Saldaña, Rivera, and L. Lopez experienced cuts in their weekly work schedules. (*Id.*) Additionally, Galaviz and Bruno were terminated. (*Id.*) The letter asked that SFTC put a stop to the retaliation and reinstate Galaviz and Bruno. (*Id.*) This letter was signed by eight current and former employees. (*Id.*; Tr. 45:18-46:11)

Since August of 2012, the Comité has sent two further letters, dated October 8 and December 3, 2012. (10/8/12 Letter, Doc. 2-8 at 45, Ex. PX 32; 12/3/12 Letter, Doc 2-8 at 47, Ex. PX 33). Similar workplace complaints were discussed in these letters. (10/8/12 Letter; 12/3/12 Letter). Kalfin never met with the Comité members as requested, and no group meeting between the Comité and SFTC management ever occurred. (*See* Tr. 65:16-66:15).

Petitioner claims that SFTC's conduct negatively impacted Comité membership and activity. Petitioner asserts that one of the founding Comité members, G. Lopez, withdrew his support for the Comité after meeting with Terrones on August 8. G. Lopez has maintained that he was never involved in the Comité and did not sign the August 7 letter, though he did attend the initial meeting. (Tr. 700:19-702:17, 705:1-3). Galaviz testified that G. Lopez attended the Comité meetings on August 6 and 7, 2012, but that, when they invited him to the meeting on August 8, he told them that he did not want to continue with his involvement in the Comité. (Tr. 346:20-348:13). G. Lopez confirmed that he told Saldaña he did not want to be a part of the group because he did not want any problems (Tr. 704:24-703:14), and the sole letter on which his signature appears is the first letter. As of August 21, 2012, only four active SFTC employees signed the letter. (*See* Doc. 3 at 21). Two new employees, Diana Castaneda and Santos Treto, signed the October 8, 2012 letter. (10/8/12 Letter). However, neither employee signed the final

Comité letter. According to an affidavit of Yolanda Galaviz dated January 29, 2013, Treto quit his job at SFTC in mid-October 2012 because SFTC management questioned and pressured him after he signed the October letter, and Castaneda declined to participate further in the Comité after signing the October letter because her hours were cut by SFTC. (Galaviz 1/29/13 Affidavit, Doc. 2-5 at 58-60, Ex. PX 17 at 5-8). No evidence related to these allegations was adduced at the ALJ hearing. The frequency of the letters slowed substantially after Galaviz and Bruno were terminated, as evidenced by the letters themselves.

### C. Procedural History

Galaviz filed an unfair labor practice charge with Region 28 of the NLRB on August 20, 2012, which she amended on October 30, 2012. Board Case 28-CA-087842. She alleged that SFTC violated Sections 8(a)(1) and 8(a)(3) of the NLRA. Upon investigation, the General Counsel issued a complaint and notice of hearing on October 31, 2012.

On December 20, 2012, the Comité filed another charge alleging that SFTC violated Section 8(a)(3) by issuing a written warning to Rivera and by discharging a third employee, J. Lopez. Board Case 28-CA-095332. The General Counsel did not find cause to pursue the termination charge, but it did find cause to pursue the charge as it relates to Rivera.

The General Counsel issued a consolidated complaint on January 31, 2013 and set an unfair labor practice hearing before an ALJ for February 26, 2013. ALJ Kocol conducted the hearing on the underlying unfair labor practice charges over the course of five days, on February 26, February 27, February 28, March 1, and March 5, 2013.

On June 25, 2013, ALJ Kocol issued his Decision and Recommended Order in Case 28-CA-087842 and Case 28-CA-095332. ALJ Kocol's decision constitutes a recommendation for the Board's ultimate disposition of the case. *See* 29 C.F.R. §§ 102.45, 102.46. In his decision,

ALJ Kocol concluded that SFTC committed some of the unfair labor practices alleged by the Board but recommended the dismissal of other allegations.

On June 26, 2013, the Board modified its Petition. (Doc. 52 at 5-6). The Board withdrew its request for temporary injunctive relief addressing the following charges: (1) that SFTC interrogated its employees about union activities in violation of Section 8(a)(1) of the NLRA; (2) that SFTC directly solicited complaints and grievances from employees in violation of Section 8(a)(1) of the NLRA; (3) that SFTC promised to help employees, solve employee problems, and increase wages if they refrained from union activities in violation of Section 8(a)(1) of the NLRA; (4) that SFTC threatened employees with unspecified reprisals and/or legal action because of union activities in violation of Section 8(a)(1) of the NLRA; (5) that SFTC threatened employees by requiring documentation of medical conditions unless they refrained from union activities in violation of Section 8(a)(1) of the NLRA; (6) that SFTC promised to improve the terms and conditions of employment if employees refrained from union activities in violation of Section 8(a)(1) of the NLRA; (7) that SFTC informed employees that it would be futile to select the Comité as their bargaining representative in violation of Section 8(a)(1) of the NLRA; (8) that SFTC promulgated a rule prohibiting employees from assisting other employees who engaged in union or other concerted activities in violation of Section 8(a)(1) of the NLRA; (9) that SFTC created the impression that union activities were under surveillance in violation of Section 8(a)(1) of the NLRA; (10) that SFTC issued written warnings to employees because of union activities in violation of Section 8(a)(1) and 8(a)(3) of the NLRA; and (11) that SFTC suspended employees because of union activities in violation of Section 8(a)(1) and 8(a)(3) of the NLRA. ALJ Kocol concluded that SFTC committed the following unfair labor practices: (1) terminating Galaviz's employment in violation of Section 8(a)(1) and 8(a)(3) of the NLRA; and

(2) terminating Bruno's employment in violation of Section 8(a)(1) and 8(a)(3) of the NLRA. The Board asserts that temporary injunctive relief remains necessary and proper to address these unfair labor practices. (Doc. 52 at 6).

## II.     LEGAL STANDARD

Section 10(j) of the NLRA authorizes district courts to grant temporary injunctions pending the Board's resolution of unfair labor practice proceedings. 29 U.S.C. § 160(j). In the Tenth Circuit, rather than applying the traditional four-part equitable test, the district court must consider two questions to resolve a petition for injunctive relief pursuant to Section 10(j): (1) whether there is reasonable cause to believe that the respondent violated the NLRA; and (2) whether the temporary injunctive relief sought is "just and proper." *Webco Indus.*, 225 F.3d at 1134; *Angle*, 382 F.2d at 658, 660.

To satisfy the reasonable cause standard, the Board is not required to prove that the charged unfair labor practice occurred. *Webco Indus.*, 225 F.3d at 1134. Rather, it need only produce some evidence to prove "that its position is fairly supported by the evidence." *Id.* (citing *Asseo v. Centro Medico del Turabo, Inc.*, 900 F.2d 445, 450 (1st Cir. 1990)) (internal alterations omitted). To find reasonable cause, the district court must be convinced that the Board's "theory of liability is valid, substantial, and not frivolous." *Id.* (citations omitted). The court should not attempt to resolve factual issues including issues of witness credibility, but should instead determine whether the Board's evidence is "sufficient to 'permit a rational factfinder, considering the evidence in the light most favorable to the Board, to rule in favor of the Board.'" *Id.* (quoting *Arlook v. S. Lichtenberg & Co., Inc.*, 952 F.2d 367, 371 (11th Cir. 1992)); *NLRB v. Gold Spot Dairy, Inc.*, 417 F.2d 761, 762 (10th Cir. 1969) ("[I]t is the peculiar province of the

Board" to evaluate the credibility of witnesses and "to draw permissible inferences from credible testimony.").

Only if the court determines that reasonable cause exists to believe that the unfair labor practices were committed should it reach the second question. *Webco Indus.*, 225 F.3d at 1135. To demonstrate that injunctive relief is just and proper, the Board must show "that the 'purposes of the Act will be frustrated' or that the 'efficacy of the Board's final order may be nullified, or the administrative procedures will be rendered meaningless' unless temporary relief is granted." *Sharp v. La Siesta Foods, Inc.*, 859 F. Supp. 1370, 1374 (D. Kan. 1994) (quoting *Angle*, 382 F.2d at 660). The court should grant whatever relief is necessary to preserve or restore the status quo existing before the alleged unfair labor practice occurred. *Angle*, 382 F.2d at 661. However, the relief ordered should not be a substitute for the exercise of the Board's remedial power; it should only be what is reasonably necessary to preserve the Board's ultimate remedial power. *Webco Indus.*, 225 F.3d at 1135 (citing *Kobell v. Suburban Lines, Inc.*, 731 F.2d 1076, 1091 (3d Cir. 1984)).

Because whether to grant injunctive relief under this standard is a matter committed to judicial discretion, the Tenth Circuit reviews grants of relief under Section 10(j) for "faulty legal premises, clearly erroneous factual findings, or improper application of the criteria governing preliminary injunctive relief." *Id.* at 1134 (quoting *Kinney v. Pioneer Press*, 881 F.2d 485, 493 (7th Cir. 1989)).

### III. ANALYSIS

Petitioner argues that SFTC violated Section 8(a)(1) and 8(a)(3) of the NLRA by firing Yolanda Galaviz and Delfina Bruno. (Doc. 3 at 38-41, 62-65). Petitioner contends that Galaviz and Bruno played key roles in the Comité's effort to organize SFTC's workforce, that SFTC

knew of their efforts, and that SFTC discharged them in response to their concerted activities. In Petitioner's view, the interim reinstatement of Galaviz and Bruno offers the best chance to restore the status quo, vindicate the rights of employees to engage in concerted actions, and preserve the Board's remedial authority. (*Id.* at 62). Petitioner argues that "[t]he longer Galaviz and Bruno are away from the workforce, the less likely it is that employee interest in the Committee will resume," and that their interim reinstatement would prevent irreparable harm to the individuals and other employees while posing little harm to SFTC. (*Id.* at 63). Were the Court to order the reinstatement of Galaviz and Bruno, Petitioner contends, other employees would receive an affirmative signal that their rights will be protected, that they will not suffer retaliation, and that they are free to organize without the threat of unemployment. (*Id.* at 64).

SFTC contends that the Board lacks reasonable cause to believe that SFTC discharged Galaviz and Bruno due to their involvement in the Comité. (Doc. 39 at 9). Specifically, according to SFTC, the record is devoid of evidence that SFTC harbored hostility toward the Comité and demonstrates that, to the contrary, Galaviz and Bruno were discharged for unprotected activity in the form of forgery and harassment of co-workers. (*Id.* at 9-17). Further, in SFTC's view, interim reinstatement is not just and proper because there was no known effort by employees to organize a union, because there is no evidence that the terminations chilled the exercise of employees' rights to organize, and because of the Board's delay in seeking relief. (*Id.* at 35-43).

It is an unfair labor practice to "interfere with, restrain, or coerce employees in the exercise" of their rights to "form, join, or assist labor organizations," 29 U.S.C. §§ 157, 158(a)(1), or to discriminate in hiring or retaining an employee for the purpose of encouraging or discouraging "membership in any labor organization," 29 U.S.C. § 158(a)(3). An employer

11

violates the NLRA by firing an employee for engaging in protected activities when there is no legitimate reason for the discharge or the allegedly legitimate reason is mere pretext. *Ready Mixed Concrete Co. v. NLRB*, 81 F.3d 1546, 1550 (10th Cir. 1996) (citing *NLRB v. Transp. Mgmt. Corp.*, 462 U.S. 393, 398 (1983)). To show a violation, the Board must prove that the employee engaged in protected activity, the employer had knowledge of the activity, and the activity was a substantial or motivating factor in the adverse employment action. *Overstreet v. Albertson's, LLC.*, 868 F. Supp. 2d 1182, 1192 (D.N.M. 2012) (citations omitted). The antiunion motivation may be shown by circumstantial evidence, including the employer's knowledge of the union activities, any other unfair labor practices committed by the employer, the timing of the discharge, and the credibility of the employer's explanation for the discharge. *Id.* (citing *NLRB v. Interstate Builders, Inc.*, 351 F.3d 1020, 1027 (10th Cir. 2003)).

On June 25, 2013, ALJ Kocol concluded that SFTC knew that Galaviz and Bruno were members and organizers of the Comité and discharged them because of their involvement in and activities on behalf of the Comité. (ALJ Decision at 13-15).

*Findings of Fact*

1. Yolanda Galaviz worked for SFTC in Santa Fe, New Mexico since May of 2003. (Galaviz 9/27/2012 Affidavit, Doc. 2-5 at 45, Ex. PX 16 at 9).
2. Delfina Bruno worked for SFTC in Santa Fe, New Mexico since February of 2009. (Bruno Affidavit, Doc. 2-5 at 20; Ex. PX 15 at 19).
3. The Plant Manager overseeing SFTC during the relevant period was Gustavo Terrones, who reports to SFTC President Kenny Kalfin.
4. Beginning in early August of 2012, Galaviz and Bruno, along with several other SFTC employees, met at a worker's center, Somos Un Pueblo Unido. They decided to form a

workers' committee to advocate on behalf of the employees, with the goal of improving working conditions at SFTC and defending the rights of employees.

5. The workers, including Galaviz and Bruno, prepared a letter announcing the formation of the Comité, lodging various complaints, and requesting specified relief on August 7, 2012. That letter was delivered to SFTC management on August 8, 2012.

6. The letter was purportedly signed by G. Lopez, but G. Lopez denied signing the letter. He did not accuse any specific person of signing his name to the letter, and there was no evidence regarding the identity of the person who affixed G. Lopez's signature to the letter.

7. On August 8, 2012, the workers, including Galaviz and Bruno, prepared a second letter on behalf of the Comité. The letter was delivered to SFTC management on August 9, 2012.

8. On August 15, 2012, the workers, including Galaviz and Bruno, prepared a third letter on behalf of the Comité. The letter was delivered to SFTC management on August 16, 2012.

9. Galaviz and Bruno spoke to other employees regarding the formation of the Comité, and some of those employees subsequently told SFTC management about these conversations. A few employees documented the Comité's membership solicitation and/or petitioning activities in writing, and the written notes mentioned Galaviz's involvement. Bruno was never mentioned. None of the written documentation suggests that Galaviz pressured or threatened other employees.

10. Terrones advised Kalfin of G. Lopez's assertion that he did not sign the letter. He also informed Kalfin of the employees' comments regarding Comité activities.

11. Kalfin made the decision to terminate the employment of Galaviz and Bruno. He claimed that the reason for the termination was the forgery of G. Lopez's name and the harassment of co-workers. However, there is no evidence to support that either Galaviz or Bruno forged G. Lopez's signature. Further, there is no indication that Galaviz or Bruno harassed their co-workers. Instead, the Court finds that the women informed their co-workers of the formation of the Comité and requested signatures on petitions in an effort to bolster Comité support and membership.

12. The decision to terminate Galaviz and Bruno was made within twenty-four hours of the delivery of the third Comité letter to SFTC management.

13. Kalfin instructed Terrones to inform Galaviz and Bruno of the terminations. Terrones was not told why the two women were being fired.

14. On August 17, 2012, Terrones met with Galaviz and Bruno individually and advised that their employment had been terminated.

15. When he made the decision to fire Galaviz and Bruno, Kalfin knew that the two women were founding members and ongoing supporters of the Comité.

16. When he fired Galaviz and Bruno, Terrones knew that the two women were founding members, ongoing supporters, and organizers of the Comité.

17. Both women continue as members of the Comité, signing the Comité letters prepared in the months following their terminations.

18. Since Galaviz and Bruno's employment was terminated, Comité activity has diminished, with the Comité sending just three further letters and retaining no new members.

*Conclusions of Law*

1. The Court concludes that the Board has demonstrated reasonable cause to believe that SFTC violated Section 8(a)(1) and 8(a)(3) of the NLRA by terminating the employment of Yolanda Galaviz and Delfina Bruno.

2. SFTC does not dispute that Galaviz and Bruno engaged in union activities, which are protected under Section 7 of the NLRA.

3. The Board has demonstrated reasonable cause to believe that SFTC President Kenny Kalfin, who made the decision to fire Galaviz and Bruno, knew that the two women were members and supporters of the Comité.

4. The Board has presented sufficient circumstantial evidence for a reasonable factfinder to conclude that Galaviz and Bruno's protected conduct was a motivating factor in SFTC's decision to fire the women.

5. This circumstantial evidence includes the timing of the discharge, the fact that no evidence existed to suggest that either Bruno or Galaviz forged G. Lopez's signature, the absence of any allegation of harassment or pressure exerted by Galaviz against a co-worker related to Comité membership, the complete absence of any written allegation against Bruno, and Kalfin's own admissions that he terminated the two women due to their solicitation of signatures on Comité letters and petitions.

6. The termination of Galaviz and Bruno's employment occurred in the midst of the Comité's initial efforts to gain a foothold at SFTC by generating support among employees for the organization. Indeed, Galaviz and Bruno were terminated within one month of the formation of the Comité. Following their discharge, the activities by the Comité slowed through the end of 2012 and ground to an apparent halt in 2013. Thus, the

Court rejects SFTC's argument that reinstatement is not appropriate because no organizing drive was ongoing.

7. Though six months lapsed between the discharge of Galaviz and Bruno and the filing of the instant Petition, the Court concludes that interim reinstatement remains just and proper. The Court recognizes that "the more time that elapses between the time the incidents occur the less effective injunctive relief becomes, and it becomes increasingly difficult to show it to be a 'just and proper' remedy." *Angle*, 382 F.2d at 661 (finding injunctive relief warranted despite passage of three months between discharge and 10(j) petition and seven months between discharge and injunction). However, "delay is only significant if the harm has occurred and the parties cannot be returned to the status quo or if the Board's final order is likely to be as effective as an order for interim relief." *Webco Indus.*, 225 F.3d at 1136 (quotation and alteration omitted) (finding injunctive relief appropriate despite seven-month delay between the original complaint and the seeking of injunctive relief). Here, the delay is not substantial. The Board's consolidated complaint was filed on January 31, 2013, and the 10(j) Petition was filed less than one month later. The Board is entitled to time to investigate and consider a case prior to initiating 10(j) proceedings. *See id.* (citations omitted) (describing the Board's "lumbering" process and noting the Board's need for a reasonable period to thoroughly investigate and deliberate). Thus, any delay by the Board was reasonable given the need to investigate the continuing allegations of unfair labor practices by SFTC. Finally, interim reinstatement will return the parties to the status quo and, without immediate action, any final order reinstating Galaviz and Bruno may lose its import and force.

8. The Court's role in granting temporary injunctive relief pursuant to Section 10(j) is to restore the status quo existing before the alleged unfair labor practice occurred. *Angle*, 382 F.2d at 661. In this case, Galaviz and Bruno were employed by SFTC and, presumably, their employment status had been verified. SFTC re-verified the work authorization of all employees after the termination of Galaviz and Bruno, but this Court's focus is the status quo ante. Before the discharges, the employment status of Galaviz and Bruno was not in question. As such, the reinstatement of Galaviz and Bruno cannot be conditioned upon re-verification of their work authorization. This conclusion is bolstered by the Code of Federal Regulations, which requires employers to verify the employment status of persons hired. 8 C.F.R. §274a.2(b). However, an individual who is reinstated for a wrongful termination, as determined by an adjudicative process, is deemed to be continuing in her employment, and the employer is not required to reexamine the individual's identity and employment authorization documents. 8 C.F.R. §§ 274a.2(b)(1)(ii) & 274a.2(b)(1)(viii)(A)(5). Accordingly, the Court concludes that the reinstatement of Galaviz and Bruno should not be conditioned on the re-verification of their employment status.

9. Temporary reinstatement of Galaviz and Bruno is just and proper because reinstating illegally discharged employees is the best visible means of rectifying the loss of employee interest in Comité membership, support, and other concerted activities. *See Angle*, 382 F.2d at 661.

10. ALJ Kocol's decision bolsters the Court's conclusion that temporary injunctive relief reinstating Galaviz and Bruno is just and proper under the circumstances. *See Albertson's*, 868 F. Supp. 2d at 1196.

11. Although ALJ Kocol recommends that the Board order additional relief, including back pay, the removal from SFTC's files any reference to the unlawful discharges, the posting of a notice to employees regarding their rights under the NLRA, and certification of compliance, (ALJ Decision at 20-22), the Court concludes that this additional relief should not be ordered as part of the Court's temporary injunction. The Board has not met its burden to show that this additional relief is "reasonably necessary to preserve the ultimate remedial power of the Board." *See Webco Indus.*, 225 F.3d at 1135.

## IV.  CONCLUSION

**IT IS ORDERED** that the Petition for temporary injunctive relief is granted. The Board has shown reasonable cause to believe that an unfair labor practice occurred in the form of the termination of Yolanda Galaviz and Delfina Bruno's employment in violation of Section 8(a)(1) and 8(a)(3) of the Act. The Board has further shown that temporary injunctive relief to address these alleged unfair labor practices is just and proper.

The Court will enter an Order granting appropriate relief contemporaneously with this Memorandum Opinion and Order.

_____
ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE